# ALBERT Y. DAYAN

**Attorney at Law**

80-02 Kew Gardens Rd., # 902, Kew Gardens, N.Y. 11415

Tel: (718) 268-9400:     Fax: (718) 268-9404

**By ECF:**

January 23, 2020

The Honorable Paul A. Crotty
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007-1312

      Re:    **United States v. Simon**
                **18-Cr-00339 (PAC)**

Dear Judge Crotty:

      I am the attorney for Jamal Simon in the above referenced case and respectfully submit this letter to Your Honor on behalf of the Defendant in connection with the upcoming Sentencing Hearing scheduled for January 30th, 2020 at 10:30 AM.

      In anticipation of Mr. Simon's testimony at the Hearing, Defense intends to establish that contrary to what is alleged by the Government in their letter dated January 6, 2020, Simon was Not "the leader of a wide-ranging scheme (the "Fraud Scheme") that involved unlawfully obtaining personally identifiable information of other individuals (including names, addresses, phone numbers, email addresses, birth date, Social Security numbers, bank account numbers, credit and debit card numbers, and cellphone service provider account numbers); impersonating those individuals in order to obtain unauthorized access to their bank, credit and debit card, and cell phone service provider accounts; using such access to, among other things, facilitate the fraudulent transfer of funds to other bank accounts controlled by members of the conspiracy and the unauthorized purchasing of merchandise and gift cards at retail stores…" The Government's assessment of the facts alleged in this case is not comprehensive at all, unfortunately.

      As an initial matter, we intend to establish that the government is unintentionally convoluting two separate schemes involved in by Simon into a single conspiracy. The first scheme, which required victims' personal banking information to enable Simon to wire funds from victims' accounts into his own, was involved in by Simon alone with no other defendant in this case and lasted for no more than approximately three weeks. The second scheme, unlawfully obtaining victims' personally identifiable information, manufacturing counterfeit credit cards encoded with identifiable information, manufacturing counterfeit credit cards, porting victims' telephone numbers to cellphones

controlled by others, impersonating victims during calls with credit card companies in which replacement cards were requested and purchasing of merchandise with fraudulent credit cards was not established, supervised, controlled and directed by Simon. In fact, he was introduced to the scheme by another apprehended coconspirator and joined the conspiracy where everyone, some of who are his own family members, had already established a footing in the scheme, except for his girlfriend Montoya, whom Simon brought in and lavished with expensive shopping sprees as is illustrated in the phone calls.

As will be illustrated at the Hearing, the government's assertion that "His roles included, among others, unlawfully obtaining victim' personally identifiable information; directing others to manufacture counterfeit credit cards encoded with victims' banking information…", is misleading because it tends to lead this Court to the assumption that all the cards manufactured and used in this conspiracy were the product of Simon's initiative and leadership. Nothing can be further from the truth. As an initial matter, the government is unintentionally clouding two separate schemes into one because there was no banking information used in the manufacturing and using of the cards. Additionally, but for the banking information scheme involved in by Simon alone, all the other acts of leadership alleged to have been conducted by Simon alone as the head of the scheme were already in play by Melvin Brown, Dwight Ford, David Boyd, Dwayne Norville and Rashaun McKay who were manufacturing fraudulent cards and using them to purchase goods long before Simon began to participate in that scheme. In fact, Simon was the only one in the scheme who did not have access to accounts on the 'black web' to obtain victims' personally identifiable information to produce the fraudulent cards. He had to purchase it from others in the conspiracy.

The government's assertion that Simon was "Directing others to manufacture counterfeit credit cards encoded with victims' banking information…" is also misleading because it tends to lead this Court to erroneously assume that all the cards manufactured and used in this conspiracy were the product of Simon's initiative and leadership. Nothing can be further from the truth. Simon was not the only participant in this scheme to have hired Davidson to manufacture fraudulent cards for a flat rate of $20.00 per card. Everyone, including Melvin Brown, Dwight Ford, David Boyd, Dwayne Norville and Rashaun McKay used Davidson to create fraudulent cards with their own stolen information provided to him for their own use without Simon's involvement or financial interest. Davidson, as a subcontractor for other fraudsters, was doing it for everyone in and out of this conspiracy for a flat rate of $20 dollars per card. Davidson was not acting at the direction of Simon for any other cards than the cards provided to him by Simon as he was doing the same for others in the scheme. As is illustrated in the discovery of this case, Davidson had even used his own cards and made his own telephonic orders at Home Depot, Bank of America, SunTrust and other banks, none of which had anything to do with Simon who had worked strictly with American Express.

The only time that Simon, Melvin Brown, Dwight Ford, David Boyd, Dwayne Norville and Rashaun McKay joined forces was when they would go on shopping sprees. That part of the otherwise separate schemes they needed to share and do together. They

would joint forces to maximize the purchase power by taking turns going into the same store using the same card with different physical persona. If they were using Simon's card than Simon would not be the first to enter the target store because he needed to be on the phone in the probable event of phone call verification associated with large purchases. If they were using another's card than the producer of that card would not be the first to enter. Unfortunately for this investigation, none of the other coconspirator's phones were lawfully intercepted except for Simon's. Therefore, the conversations cited by the government in their sentencing letter depict only the conversations had in connection to Simon's cards and from this the government erroneously concludes that Simon was the leader and organizer for all fraudulently manufactured cards and all the losses in this conspiracy. Nothing can be further from the truth.

If "Simon was involved in nearly every facet of the Fraud Scheme", so were Melvin Brown, Dwight Ford, David Boyd, Dwayne Norville, Darren Davidson and Rashaun McKay, for the sake of fairness and parody in sentencing.

Thank you Your Honor.

Very truly yours,

/s/
Albert Y. Dayan
Attorney at Law

cc.   Assistant U.S. Attorney
      SDNY