IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK



Jamal Simon )
   Petitioner )
   v. ) Case No. 18CR339-01(PAC)
United States Of America )
   Respondent )

<u>Petitioner's Motion For A Reduction
Of Sentence Pursuant To 18 U.S.C. § 3582</u>

NOW COMES before this Honorable Court, Petitioner Jamal Simon, Pro Se, whom respectfully moves this here Court pursuant to 18 U.S.C. § 3582 for a reduction of his sentence of imprisonment due to recent amendments to the United States Sentencing Guidelines which retroactively affect Petitioner's case and his sentence that was imposed by this Court. For the reasons set forth below, this Court should grant Petitioner's motion for a two-level reduction of his sentence.

## BACKGROUND AND JURISDICTION

Jamal Simon, the Petitioner was sentenced by this Court on January 30, 2020 to a term of imprisonment of 91 months and 3 years of supervised release. Petitioner Simon was committed to the custody of the Bureau of Prisons on March 26, 2021. Mr. Simon's conviction and sentence stems from his activity on December 20, 2018. Currently Petitioner Simon is housed at FCI Fort Dix which is a low-security prison located in Southern New

Jersey where he is executing his 91 month sentence. Petitioner Simon's statutory release date based upon Good Conduct Time is July 4, 2027. Petitioner Simon's FSA release date is set for November 16, 2026 (subject to change monthly due to accurement of FSA Time Credits on a monthly basis).

As the Court which imposed the aforementioned sentence of imprisonment, this Court has jurisdiction to rule on and decide Petitioner Simon's instant motion for a reduction of the original term of imprisonment imposed. Although Petitioner has not exhausted or attempted to exhaust any administrative remedies through the Bureau of Prisons ("BOP") prior to bringing this motion before the Court, it is clear that 18 U.S.C. § 3582 does not require the same jurisdictional prerequisite to Petitioner Simon bringing this Motion. The only exhaustion requirement in 18 U.S.C. § 3582 applies to motions for compassionate release based upon "extraordinary and compelling" circumstances in a particular case. Mr. Simon is not bringing his motion as a motion for compassionate release but is bringing his motion under 18 U.S.C. § 3582(c)(2) for a modification of his original sentence based upon a newly passed Amendment to the sentencing guidelines.

## SUPPLEMENTARY INFORMATION

The United States Sentencing Commission is an independent agency in the judicial branch of the United States Government. The Commission promulgates sentencing guidelines and policy statements for federal sentencing courts pursuant to 28 U.S.C. § 994(a). The Commission also periodically reviews and revises previously promulgated guidelines pursuant to 28 U.S.C. § 994(o) and generally submits guideline amendments to the Congress not later than the first day of May each year pursuant to 28 U.S.C.

§ 994(p). Absent action of the Congress to the contrary, submitted amendments become effective by operation of law on the date specified by the Commission (generally November 1 of the year in which the amendments are submitted to Congress).

The Commission specified an effective date of **November 1, 2023,** for the amendment listed above and included in this document.

RETROACTIVE APPLICATION OF PARTS A AND B, SUBPART 1 OF AMENDMENT 821

**Reason For Amendment-** The Commission has determined that the targeted changes to the criminal history rules made in Parts A and B, Subpart 1 of Amendment 821 should be applied retroactively. Accordingly, this amendment expands the listing in subsection (d) of §1B1.10 (Reduction in term of imprisonment as a result of amended guidelines range (Policy Statement)) to implement the directive in 28 U.S.C. § 994(u) with respect to guideline amendments that may be considered for retroactive application.

Part A of Amendment 821 limits the overall criminal history impact of "status point" (i.e., the additional criminal history points given to defendants for the fact of having committed the instant offense while under a criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status) under §4A1.1 (criminal history category). Part B, Subpart 1 of Amendment 821 creates a new chapter four guideline at §4C1.1 (adjustment for certain zero point offenders) providing a decrease of two levels from the offense level determined under Chapters Two and Three for defendants who did not receive any criminal history points under Chapter Four, Part A and whose instant offense did not involve specified aggravating factors.

In making this determination, the Commission considered the following factors, among others- (1) the purpose of the amendment, (2) the magnitude of the change in the guideline range made by the amendment and (3) the difficulty of applying the amendment retroactively. See §1B1.10, comment. (backg'd). Applying those standards to Amendment 821, the Commission determined that, among other factors-

(1)   The purpose of these targeted amendments is to balance the Commission's mission of implementing data-driven sentencing policies with its duty to craft penalties that reflect the statutory purposes of sentencing and to reflect "advancement in knowledge of human behavior as it relates to the criminal justice process." See 28 U.S.C. § 991(b). The Commission determined that the policy reasons underlying the prospective application of the amendment apply with equal force to individuals who are already

-3-

sentenced.

In relation to Part A, the Commission determined that accounting for status on a more limited basis continues to serve the broader purposes of sentencing while also addressing other concerns raised regarding the impact of status points. The Commission also determined that the changes made by Part A reflect updated research suggesting that status points' ability to predict future recidivism-a core justification for their use-may be less than the original Commission may have expected.

In implementing Part B, Subpart 1, the Commission sought, in part, to fulfill one of its core congressional directives to ensure that "the guidelines reflect the general appropriateness of imposing a sentence other than imprisonment in cases in which the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense." See 28 U.S.C. § 994(j). The Commission further determined that the changes made by Part B, Subpart 1 reflect its statutory mission to provide for penalties that are "sufficient, but not greater than necessary" by recognizing that individuals with zero criminal history points have considerably lower recidivism rates than other sentenced individuals, as well as the fact that courts generally depart and vary more often in cases involving individuals with zero criminal history points as compared to other individuals.

(2) The Commission determined that the changes in Parts A and B, Subpart 1 of Amendment 821 would meaningfully impact the sentence of many currently incarcerated individuals. The Commission estimates that 11,495 currently incarcerated individuals would have a lower guideline range as the result of retroactive application of Part A of Amendment 821, with an average sentence reduction of 14 months (or 11.7%). The Commission further estimates that 7,272 currently incarcerated individuals would have a lower guideline range as the result of retroactive application of Part B, Subpart 1 of Amendment 821, with an average sentence reduction of 15 months (or 17.6%).

(3) The Commission determined that applying Part A of Amendment 821 retroactively, requiring the recalculation of criminal history points and making the determination as to whether the individual would fall within a lower criminal history category, presents minimal difficulty. While recognizing that consideration of the exclusionary criteria in Part B, Subpart 1 of Amendment 821 could result in an increased administrative burden, the Commission concluded that any such burden is manageable.

The Commission concludes that consideration of these factors supports a policy determination that a reduced guideline range is sufficient to achieve the purposes of sentencing and that, in the sound discretion of the court, a reduction in the term of imprisonment may be appropriate for previously sentenced, qualified defendants. In making this determination, the Commission remains cognizant of the fact that public safety will be considered in every case because §1B1.10 requires the court, in determining whether and to what extent a reduction in the term of imprisonment is warranted, to consider the nature and seriousness of the danger to any person or the community that may be posed by such a reduction. See §1B1.10, comment. (n.1(B)(ii)).

At the same time, the Commission also determined that the agencies of the federal criminal justice system responsible for reentry into society need time to prepare, and to help the released individual prepare, for that reentry. The Commission concluded that a three-month delay in the effective date of any order granting sentence reductions under Amendment 821 is needed to (1) to give courts adequate time to obtain and review the information necessary to make an individualized determination in each case of whether a sentence reduction is appropriate, (2) to ensure that, to the extent practicable, all individuals who are to be released have the opportunity to participate in reentry programs and transitional services, such as placement in halfway houses, while still in the custody of the Bureau of Prisons, which increases their likelihood of successful reentry to society and thereby promotes public safety, and (3) to permit those agencies that will be responsible for individuals after their release to prepare for the increased responsibility.

Therefore, the Commission added a special instruction at subsection (e) providing that a reduced term of imprisonment based on retroactive application of Amendment 821 shall not be ordered unless the effective date of the Court's order is February 1, 2024, or later. An application note clarifies that this special instruction does not preclude the court from conducting sentence reduction proceedings before February 1, 2024 as long as any order reducing the term of imprisonment has an effective date of February 1, 2024, or later.

**Amendment.**

**§1B1.10. Reduction in Term of Imprisonment as a Result of Amended Guideline Range (Policy Statement)**

(a)   AUTHORITY.-

   (1) IN GENERAL-In a case in which a defendant is serving a term of imprisonment, and the guideline range applicable to that defendant has subsequently been lowered as a result of an amendment to the Guidelines Manual listed in subsection (d) below, the court may reduce the defendant's term of

imprisonment as provided by 18 U.S.C. § 3582(c)(2). As required by 18 U.S.C. § 3582(c)(2), any such reduction in the defendant's term of imprisonment shall be consistent with this policy statement.

(2) EXCLUSIONS.-A reduction in the defendant's term of imprisonment is not consistent with this policy statement and therefore is not authorized under 18 U.S.C. § 3582(c)(2) if

(A) none of the amendments listed in subsection (d) is applicable to the defendant, or

(B) an amendment listed in subsection (d) does not have the effect of lowering the defendant's applicable guideline range.

(3) LIMITATION.-Consistent with subsection (b), proceedings under 18 U.S.C. § 3582(c)(2) and this policy statement do not constitute a full resentencing of the defendant.

(b) DETERMINATION OF REDUCTION IN TERM OF IMPRISONMENT.-

(1) IN GENERAL.-In determining whether, and to what extent, a reduction in the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) and this policy statement is warranted, the court shall determine the amended guideline range that would have been applicable to the defendant if the amendments to the guidelines listed in subsection (d) had been in effect at the time the defendant was sentenced. In making such determination, the court shall substitute only the amendments listed in subsection (d) for the corresponding guideline provisions that were applied when the defendant was sentenced and shall leave all other guideline application decisions unaffected.

(2)   LIMITATION AND PROHIBITION ON EXTENT OF REDUCTION.-

(A) LIMITATION.-Except as provided in subdivision (B), the court shall not reduce the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) and this policy statement to a term that is less than the minimum of the amended guideline range determined under subdivision (1) of this subsection.

(B) EXCEPTION FOR SUBSTANTIAL ASSISTANCE.-If the term of imprisonment imposed was less than the term of imprisonment provided by the guideline range applicable to the defendant at the time of sentencing pursuant to a goverment motion to reflect the defendant's substantial assistance to authorities, a reduction comparable less than the amended guideline range determined under subdivision(1) of this subsection may be appropriate.

(C) PROHIBITION.-In no event may the reduced term of imprisonment be less than the term of imprisonment the defendant has already served.

(c) CASES INVOLVING MANDATORY MINIMUM SENTENCES AND SUBSTANTIAL ASSISTANCE.-If the case involves a statutorily required minimum sentence and the court had the authority to impose a sentence below the statutorily required minimum sentence pursuant to a government motion to reflect the defendant's substantial assistance to authorities, then for the purposes of this policy statement the amended guideline range shall be determined without regard to the operation of §5G1.1 (Sentencing on a Single Count of Conviction) and §5G1.2 (Sentencing on Multiple Counts of Conviction).

COMMENTARY

Application Notes.

1. Application of Subsection (a).-

    (A) Eligibility.-Eligibility for consideration under 18 U.S.C. § 3582(c)(2) is triggered only by an amendment listed in subsection (d) that lowers the applicable guideline range (i.e., the guideline range that corresponds to the offense level and criminal history category determined pursuant to §1B1.1(a), which is determined before consideration of any departure provision in the Guidelines Manual or any variance). Accordingly, a reduction in the defednant's term of imprisonment is not authorized under 18 U.S.C. § 3582(c)(2) and is not consistent with this policy statement if (i) none of the amendments listed in subsection (d) is applicable to the defendant or (ii) an amendment listed in subsection (d) is applicable to the defendant but the amendment does not have the effect of lowering the defendant's applicable guideline range because of the operation of another guideline or statutory provision (e.g., a statutory mandatory minimum term of imprisonment).

    (B) Factors For Consideration.-

        (i) In General.-Consistent with 18 U.S.C. § 3582(c)(2), the court shall consider the factors set forth in 18 U.S.C. § 3553(a) in determining- (I) whether a reduction in the defendant's term of imprisonment is warranted and (II) the extent of such reduction, but only within the limits described in subsection (b)

        (ii) Public Safety Consideration.-The Court shall

        consider the nature and seriousness of the danger to any person or the community that may be posed by a reduction in the defendant's term of imprisonment in determining- (I) whether such a reduction is warranted and (II) the extent of such reduction, but only within the limits described in subsection (b).

        (iii)   Post-Sentencing Conduct.-The court may consider post-sentencing conduct of the defendant that occurred after imposition of the term of imprisonment in determining- (I) whether a reduction in the defendant's term of imprisonment is warranted and (II) the extent of such reduction, but only within the limits described in subsection (b).

2.   Application of Subsection (b)(1).-In determining the amended guideline range under subsection (b)(1), the court shall substitute only the amendments listed in subsection (d) for the corresponding guideline provisions that were applied when the defendant was sentenced. All other guideline application decisions remain unaffected.

Background:Section 3582(c)(2) of Title 18, United States Code, provides: "In the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has been subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. § 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."

    This policy statement provides guidance and limitations for a court when considering a motion under 18 U.S.C. § 3582(c)(2) and implements 28 U.S.C. § 994(u), which provides "If the Commission reduces the term of imprisonment recommended in the guidelines applicable to a particular offense or category of offenses, it shall specify in what circumstances and by what amount the sentences of prisoners serving terms of imprisonment for the offense may be reduced." The Supreme Court has concluded that proceedings under section 3582(c)(2) are not governed by United States v. Booker, 543 U.S. 220 (2005), and this policy statement remains binding on courts in such proceedings. See Dillon v. United States, 560 U.S. 817 (2010).

    Among the factors considered by the Commission in selecting the amendments included in subsection (d) were the purpose of the amendment, the magnitude of the change in the guideline range made by the amendment, and the difficulty of applying the amendment retroactively to determine an amended guideline range under subsection (b)(1).

The listing of an amendment in subsection (d) reflects policy determinations by the Commission that a reduced guideline range is sufficient to achieve the purposes of sentencing and that, in the sound discretion of the court, a reduction in the term of imprisonment may be appropriate for previously sentenced qualified defendants. The Authorization of such a discretionary reduction does not otherwise affect the lawfulness of a previously imposed sentence, does not authorize a reduction in any other component of the sentence, and does not entitle a defendant to a reduced term of imprisonment as a matter of right.

The Commission has not included in this policy statement amendments that generally reduce the maximum of the guideline range by less than six months. This criterion is in accord with the legislative history of 28 U.S.C. § 994(u) (Formaly § 994(t)), which states "It should be noted that the Committee does not expect that the Commission will recommend adjusting existing sentences under the provision when guidelines are simply refined in a way that might cause isolated instances of existing sentences falling above the old guidelines or when there is only a minor downward adjustment in the guidelines. The Committee does not believe the courts should be burdened with adjustments in these cases." S.Rep.225, 98th Cong., 1st Sess.180 (1983).

### The Relevant §3553(a) Sentencing Factors Warrant A Two-Level Reduction Of Mr. Simon's Originally Imposed Sentence

Being that Mr. Simon is bringing his motion for a reduction of sentence under 18 U.S.C. § 3582(c)(2) and not as one for compassionate release, the showing of "extraordinary and compelling" reasons is not required by law. But before the court may grant a two-level reduction, it must assure itself that a two-level reduction accords with "the factors set forth in §3553(a) to the extent they are applicable." See 18 U.S.C. § 3582(c)(1)(A). These Factors are- (1) the nature and circumstances of the offense as well as the nature and characteristics of the defendant, (2) the need for the sentence imposed to (a) reflect the seriousness of the offense and just

punishment, (b) provide deterrence, (c) protect the public, and (d) provide the defendant with needed educational or vocational training or medical care. See 18 U.S.C. § 3553(a)(2)-(3). Here is how all applicable 3553(a) sentencing factors weigh in favor of reducing Mr. Simon's originally imposed sentence by two-levels.

A) Reflect The Seriousness Of The Offense And Just Punishment

Petitioner Simon does not dispute that his crime is classified as a "serious" offense. But the vast majority of Federal Offenses are classified as "serious." Just because an offense is classified as "serious" does not mean that this sentencing factor weighs against granting relief authorized by Congress, or in this case, the United States Sentencing Commission. If that was the case, no one would ever achieve any relief. Prior to the instant case, Petitioner Simon had no criminal history. Petitioner Simon's crime is not a crime of violence, it was not terrorism related, was not a sex based offense, was not a hate crime, no death or injury resulted from the conduct etc. Shortly after Petitioner's arrest, he acknowledged his guilt which is guilty plea demonstrates that. Mr. Simon chose to plead guilty rather than take his case to trial and waste precious tax-payer dollars on charges that he knew he was guilty of. Petitioner Simon has reflected on what led him to make poor life decisions including the conduct of the instant offense. Petitioner Simon deeply regrets his actions that led up to this instant case and wishes he could travel back in time to make sure he did not engage in

the charged conduct. Mr. Simon desired to resolve the case quickly and take whatever penalty came his way and serve whatever time he was given and rehabilitate himself and start fresh given a second chance. Petitioner was given an average sentence for his crime and was given zero criminal history points when calculating his criminal history score under Chapter Four of the Sentencing Guidelines. Petitioner Simon has a great release plan to execute upon his release. Accordingly, this sentencing factor weighs in favor of granting a two-level reduction in Mr. Simon's originally imposed sentence.

B) Provide Deterrence

Petitioner Simon was sentenced to a term of 91 months imprisonment followed by a 24 month sentence to be served consecutively for a total of 115 months. This is a significant sentence without a doubt as with Good Conduct Time, Petitioner Simon will not be released until July 4, 2027. Even with the benefit of qualifying to earn additional time credits under the First Step Act, his release date is still at November 16, 2026 (subject to change monthly from accurement of FSA Time Credits). This sentence has taken a significant portion of Petitioner Simon's life away from him that he cannot regain. His sentence cannot be compared to those individuals that have been sentenced to decades or more imprisonment but it still is a significant sentence that does provide enough deterrence to make Petitioner think twice before committing another or similar offense.

Petitioner Simon himself has stated that he wishes that he could go back in time so he could prevent himself from committing the instant offense and deeply regrets his actions and has never attempted to hide his guilt. Mr. Simon has made it his ultimatum to never come back to prison again and to live a law abiding and productive life upon his release. The fact that Mr. Simon has said all of this and has made a release plan designed to prevent him from coming back to prison, clearly demonstrates that the sentence has provided adequate deterrence to protect the public from future crimes of Petitioner. Lengthy prison sentences tend to provide both general and special/specific deterrence and the instant case is one of those cases. Thus this sentencing factor weighs in favor of granting Petitioner Simon's motion to reduce his originally imposed sentence by two-levels.

C) Protect The Public

There really is no absolute need to protect the public here in Petitioner Simon's case. Nevertheless, this sentencing factor will be addressed. Petitioner Simon was convicted of white collar crimes including Conspiracy to Commit Wire Fraud, Wrongfully Obtaining Individually Identifiable Information, Identity Theft and Aggravated Identity Theft. Typically crimes where protection of the public is needed are crimes involving children such as Child pornography offenses, Online enticement offenses, Rape etc. Protection of the public can also be needed in instances of

murder, attempted murder, aggravated assault offenses, acts of terror and any other crimes of violence. White collar crimes are not crimes of violence. It is true that white collar crimes can do damage to individuals lives financially but that does not warrant this sentencing factor weighing against granting Petitioner a two-level reduction in his originally imposed sentence. Petitioner Simon was ordered to pay restitution in the amount of $2,430,771.05. Petitioner understands the damage that has been done because of his crime but that can easily be cured with restrictions upon his release dealing with opening financial accounts and other appropriate restrictions pertaining to the instant offenses. Petitioner Simon poses no danger to the community or the public. Petitioner Simon has received a "PATTERN" Score of Low which translates into that he poses a low risk to the public or anyone in it and that he has a low risk to recidivate. No one was physically harmed in Petitioner's case and Petitioner has demonstrated great levels of remorse for his actions and granting Petitioner Simon a two-level reduction in his originally imposed sentence would pose no danger to anyone or the community in its entirety as said earlier. In fact, due to the great levels of remorse that Petitioner Simon has demonstrated, his acknowledgement of his guilt and that his actions were wrong, that he deeply regrets his actions and wishes he could go back in time to make sure he would not commit the instant offense and has made a release plan geared to prevent him from coming back to prison and allow him to be a productive member of scoiety and law abiding and the efforts to rehabilitate

himself so far while in prison all are in the public's best interest to grant Petitioner Simon a two-level reduction of his originally imposed sentence. Accordingly, This sentencing factor weighs in favor of granting Petitioner Simon a two-level reduction of his originally imposed sentence.

### D) Provide The Defendant With Needed Educational Or Vocational Training Or Medical Care

Since Petitioner Simon has arrived to FCI Fort Dix, Petitioner Simon has taken ample opprtunity to rehabilitate himself. he has taken various classes over at education with the Adult Continuing Education Program, has taken time to begin studying law and has ordered numerous legal course material for personal study and is deciding whether or not to enroll at Blackstone Career Institute to take their Paralegal Certificate Course. Petitioner has numerous jobs on the West Compound to keep himself busy and out of trouble. Mr. Simon has taken numerous classes through recreation as well such as know your brain, healthy body as you age, nutrition, arthritis foundational course, etc. Mr. Simon partakes in numerous exercise classes at the gym such as spin class, bootcamp class, yoga class, pilates class, volleyball league, basketball league, football league, weight training etc. Petitioner Simon attends various programs at religious services to upkeep his spirituality and also placed himself on the waiting list for religious classes such as House of Healing. Petitioner Simon assists in the sanitation of his building in his effort to

not just better himself but to better others and what better place to start then living conditions. He is a model prisoner that other prisoners look up to for help with whatever they need help with or are going through. Petitioner is on the waiting list for the RDAP Program in Fort Dix. Petitioner is always helping someone around his building, always offering assistance in any way that he can. Petitioner on a regular basis gives to the needy inmates that either have limited or no incoming source of money to sustain their needs and he does not ask for it to be returned at a later date.

Petitioner did not just start his efforts to rehabilitate when he arrived to FCI Fort Dix. When he was Pre-trial at MCC New York, Mr. Simon worked as an Orderly which was responsible for the care of the unit and he worked part time in the kitchen making all of the lunch and dinner meals for the facility. He also took the Anger Management Class while at MCC New York and partook in various religious services and charitable work. This rehabilitative effort also continued at his first designated institution of FCI Berlin which is a Medium Security Prison in New Hampshire. While at FCI Berlin, Petitioner Simon took the Embracing Faith Class as well as Drug Education through psychology. He was on the waiting list for various courses offered by Religious Services but was transferred to his current institution prior to the commencement of the courses. It is clear that Petitioner Simon has indeed rehabilitated himself and is turning his life around and taking this sentence as a life lesson and encouragement to fix his life and go out into the world and

be a law abiding and productive citzen of this great country. Petitioner Simon does not need extensive medical care to where if he was released today, the Court and BOP would call into question about how he would obtain such medical care and where he would be receiving such medical care. However to address this potential concern, Petitioner Simon will have health care coverage upon his release and a hospital to receive any medical care that he would need in the future. According to Petitioner Simon's most recent "PATTERN" score he is at a low risk of recidivism and has maintained that low risk for at least two consecutive risk assessments. Originally Petitioner was scored at a medium risk of recidivating but that was lowered. This is direct evidence of Petitioner Simons efforts to rehabilitate himself. Rather than choose the life of drugs, alcohol, laziness etc which is very common in prison, he chose to better himself and prepare for his eventual release from prison so that when he is released he is ready to be a productive member of society and stay out of trouble. Petitioner has very strong ties to his community, all of which support him to this very day. For all the aforementioned reasons, this sentencing factor weighs strongly in favor of granting Petitioner Simon's motion for a two-level reduction of his originally imposed sentence.

## CONCLUSION

It is crystal clear that none of the excluding factors in the Amendment apply to Petitioner Simon so for the Foregoing reasons,

This Court should grant Petitioner Simon's Motion for a two-level reduction of his originally imposed sentence.

Respectfully Submitted,

*Jamal Simon*

Jamal Simon
Reg#19494-104
FCI Fort Dix
PO Box 2000
Joint Base MDL, NJ 08640

AMENDMENT 821
REDUCTION IN SENTENCE
Questionnaire

Full Name: Jamal Simon   Building: 5811
Reg. #: 19494-104
Email address: N/A   Date of Birth: 5/16/1988
Are you a U.S. Citizen? Yes ✓  No ___   If NO, what country? N/A
What is your projected release date? November 16, 2026

What are the convictions on your current case?

1.
2.
3.
4.

What city, state, and district was your courthouse in?
Lower Manhattan, New York, Southern District

Did you plead GUILTY on your case? Yes ✓  No ___   Plea Agreement? Yes ✓  No ___
What is your sentence length? (months / years) 115 months
Supervised Release Length: 3 years   Fine or Restitution Amount? $2,430,771.05
Date of Arrest: _____   Date of Conviction: _____
Did you appeal your conviction? Yes ___ No ✓   If YES, was it affirmed? Yes ___ No ___
Do you have any PRIOR felony convictions? Yes ___ No ✓   State / Federal (circle one)
If YES, what was that conviction for? N/A

If YES, were you on probation, supervised release, parole, home confinement, work release, or in halfway house when you were arrested for the current case?   Yes ___ No ___

If YES, did you receive an additional TWO (2) point increase to your criminal history category because you were still on probation or supervised release when you caught your new case?   Yes ___ No ___ Not Sure ___

At sentencing, what was your Criminal History Category? (circle one)

    **(I)**  II  III  IV  V  VI
    0-1  2-3  4-6  7-9  10-12  13+

What was your Offense Level? _____   Sentencing Guideline Range (months): _____
How many criminal history points did you have at sentencing? 0
Are you classified as a Career Offender? Yes ___ No ✓

1

7

## ZERO POINT OFFENDERS

| Question | Yes | No |
|---|---|---|
| Was your crime considered VIOLENT? | | ✓ |
| Was there a victim on your case? | | ✓ |
| Was your crime Terrorism related? | | ✓ |
| Did your offense result in death or serious injury of any person? | | ✓ |
| Was your crime considered a sex offense? | | ✓ |
| Did you personally cause substantial financial hardship to any person? | | ✓ |
| Did you receive a gun charge or an enhancement for guns? | | ✓ |
| Were you convicted for a charge involving violation of Individuals Rights? | | ✓ |
| Was your conviction considered a Hate Crime? | | ✓ |
| Did you receive a conviction for Continuing Criminal Enterprise? | | ✓ |
| Did you receive any enhancement for Leadership? | ✓ | |
| Did you receive the mandatory minimum sentence for your crime? | ✓ | |

## RELEASE PLAN

What is your release address?

Who will be living with you?    Age: 34

Name: Gabirel Christian    Relation: Girlfriend
Primary Contact #: (347) 728 2105

Name: _____    Relation: _____
Name: _____    Relation: _____
Name: _____    Relation: _____
Name: _____    Relation: _____

Do you have a job waiting for you upon release?    Yes ✓  No ___
Where will you work? (company name / city / state)
Brooklyn and Lobster Brooklyn NY

What kind of work will you be doing? Resturant

Will you go back to school upon release?    Yes ✓  No ___
If YES, where? Lincoln Tech    , For what? HVaC

2

CERTIFICATE OF SERVICE

    I herein certify that a true copy of the foregoing as sent via first class mail with postage prepaid and affixed thereon this __1__ ay of ~~~~ May, 2024 by placing same in the United States mailbox to the Clerk of this Court at the address set forth below.

United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

By: Jamal Simon

- 5 -